# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ROBERT L. JOHNSON, JR.,**

    **Plaintiff,**

    v.

**Civil Action 2:17-cv-1006**
**Chief Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Robert L. Johnson, Jr. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Response in Opposition (ECF No. 14), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff protectively filed his application for a Period of Disability and Disability Insurance Benefits on March 12, 2013. Plaintiff also protectively filed an application for supplemental security income on March 12, 2013. In both applications, Plaintiff alleged a disability onset of July 31, 2012. Plaintiff's applications were denied initially on September 19,

2013, and upon reconsideration on October 25, 2013. Plaintiff filed a written request for a hearing on November 20, 2013. Administrative Law Judge Robert W. Flynn ("ALJ") held a video hearing on March 24, 3016, at which Plaintiff, represented by counsel, appeared and testified. Mark A. Pinti, a vocational expert, also appeared and testified at the hearing. On April 20, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On September 21, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff asserts that the ALJ erred in finding Plaintiff did not meet or equal Listing §12.05(C), and in the alternative that the ALJ erred by not consulting with a medical expert during the Listing analysis. Specifically, Plaintiff asserts that 1) his IQ score is valid; 2) that he has shown a deficit in adaptive functioning; 3) that he need not provide an IQ score prior to age 22; and 4) that the ALJ erred in not considering Plaintiff's physical limitation.

## II. PLAINTIFF'S TESTIMONY

At the administrative hearing, Plaintiff testified that he is engaged and lives with his fiancée and infant daughter. (R. at 47–48.) When the ALJ asked Plaintiff why he was alleging his disability onset date as of July 31, 2012, Plaintiff stated (through his attorney) that he wished to amend his onset date to June 28, 2013, the date on which Plaintiff injured his arm. (R. at 49–50.) Plaintiff testified that he had not worked since that date. (R. at 50–51.) Plaintiff testified that since injuring his arm, he has not had full function in his right arm, his right hand has been "worthless," he has had mild carpel tunnel syndrome in his left hand, lower back pain, sleeping problems, and cognitive difficulties. (R. at 52–54.) He also stated that he takes several prescription medications and that he experiences mood swings and "freaks out" when he is

around people. (R. at 56–58.) When asked by the ALJ what he does during the day, Plaintiff indicated he does not do any household chores, gardening, or care for his baby. (R. at 60–65.) Plaintiff stated he is not able to use computers, hold a coffee cup, or engage in outdoor activities. (*Id*.) When questioned by his attorney, Plaintiff stated that he has difficulty dressing himself and caring for his personal hygiene. (R. at 67.) He further testified that he experiences chronic abdominal pain and daily nausea. (R. at 68.)

### III. RELEVANT MEDICAL RECORDS

**A. Dr. Deardroff, Ph.D.**

On May 7, 2013, Dr. Paul Deardroff examined Plaintiff to assess "his mental status as it relates to his claim for mental health benefits." (R. at 356.) Dr. Deardroff used the following sources of information: 1) a clinical interview; 2) Wechsler Adult Intelligence Scale-IV (WAIS-IV) Wechsler Memory Scale-IV (WMS-IV); 3) Review of records. (*Id*.)

Dr. Deardroff reported on Plaintiff's mental status in several different categories. (R. at 359-60.) Under "Appearance and Behavior," Dr. Deardroff described Plaintiff as "a polite, cooperative young man with whom rapport was adequately established." (R. at 359.) Under "Speech and Thought Processes," Dr. Deardroff described Plaintiff's receptive language skills as "adequate," but that "his phraseology, grammatical structure, and vocabulary" suggested Plaintiff was intellectually limited. (*Id*.)

Under both "Affect and Mood" and "Anxiety," Dr. Deardroff described outward signs of anxiety ("[Plaintiff] displayed nervous laughter, noticeably moist palms, and bounced his leg throughout the evaluation"). (R. at 360.) Dr. Deardroff also suggested that Plaintiff's symptomology could be associated with PTSD. (*Id*.) Under "Sensorium and Cognitive Functioning," Dr. Deardroff observed that Plaintiff's "general level of intelligence appeared to

3

fall in the mildly retarded range," and that Plaintiff "was alert, responsive, and oriented to time, place, person, and situation. He was not confused and lacked no awareness as to his past or present situation." (*Id.*) Finally, under "insight and judgement," Dr. Deardroff opined that "given [Plaintiff's] limited intellect and lack of independent living experiences, it is not likely that Mr. Johnson's judgement is sufficient for him to make decisions affecting his future or to conduct his own living arrangements efficiently." (*Id.*)

On the Wechsler Adult Intelligence Scale, Plaintiff obtained a Full Scale IQ score of 48. (R. at 361.) Dr. Deardroff explained that this score would indicate Plaintiff was currently functioning in the moderately mentally retarded range, or at less than the 1st percentile range. (*Id.*) Dr. Deardroff went on to note, however, that Plaintiff's tested IQ was "lower than would be expected on the basis of his clinical presentation. Emotional factors very likely interfered with his performance on this measure as he appears to be only mildly mentally retarded." (*Id.*)

On the Wechsler Memory Scale, Plaintiff tested below the 1st percentile in every category. (R. at 361–62.) Dr. Deardroff opined on these results, stating "test evidence suggests that [Plaintiff's] memory, attention and concentration skills are weak in every area assessed." (R. at 362.)

Dr. Deardroff assigned the following DSM-IV Multiaxial classifications: Axis I: Generalized Anxiety Disorder; Axis II: Borderline Intellectual Functioning; Axis III: Self-reported back and knee pain; Axis IV: Educational problems, occupational problems, problems interacting in a social environment; Axis V: GAF = 49, Serious Symptomology. (*Id.*) Dr. Deardroff did not believe Plaintiff had a strong prognosis, even with the help of a mental health professional. (*Id.*) Additionally, Dr. Deardroff believed that Plaintiff would have difficulty managing funds responsibly. (*Id.*)

On the Functional Assessment, Dr. Deardroff stated that Plaintiff had "no difficulty attending or responding to simple questions or following simple instructions," but that his performance on measures of short-term memory, attention, and concentration were poor or very poor. (*Id*.) Dr. Deardroff also stated that Plaintiff appeared anxious, and reported no friends and paranoia when working. (R. at 363–64.)

**B. Chris Banks, OTR/L**

On April 22, 2014, Chris Banks, OTR/L administered an Adena Functional Capacity Evaluation on Plaintiff. (R. at 588.) Ms. Banks' opined that "Mr. Johnson is unable to use the right hand for any fine motor tasks, grasping, or reaching." (*Id*.) He has difficulty with the right UE and basically uses the right upper extremity to assist the left in lifting task performance with bilateral hands." (*Id*.)

In individual exercises, Ms. Banks consistently found Plaintiff unable or severely limited in the use of his right arm and hand. (R. at 589-592.) For example, Ms. Banks found that Plaintiff's right shoulder rotation was reduced by 50 percent. (R. at 589.) Ms. Banks found that Plaintiff was unable to demonstrate any of the positions of the "5-Position Hand-Grip Test" with his right hand. (R. at 590.) Similarly, Plaintiff was completely unable to use his right hand for fine dexterity. (R. at 592.)

Ms. Banks additionally noted that Plaintiff was capable in the light strength range with his left upper extremity and had excellent endurance. (R. at 592.)

**C. State Agency Evaluations**

In October 2013, a State Agency Psychological consultant, Aracelis Rivera, Psy.D. reviewed Plaintiff's records and determined there was insufficient evidence to establish a determinable mental impairment. (R. at 123.) Dr. Rivera also noted Plaintiff had an "Open

5

Wound of Upper Limb (Soft Tissue Injury)" and marked the severity as "severe." (R. at 123.)

Also in October of 2013, State Agency medical consultant Dr. Diane Manos examined Plaintiff's records. (R. at 118-126). Dr. Manos found that Plaintiff "did not allege any physical impairments." (R. at 122.) After describing Plaintiff's arm injury and surgery, Dr. Manos stated that "[t]his impairment is not expected to meet the 12 month duration requirement." (*Id.*) Dr. Manos also noted the evidence that Plaintiff had been working on the family farm doing physical labor. (*Id.*) Dr. Manos found that there was insufficient evidence to support a mental impairment. (*Id.*) Dr. Manos goes on to explain that Plaintiff's testimony about his condition was discounted because there was "reason to believe that . . . an inaccurate or incomplete statement that is material to the determination was knowingly made, or that information that is material to the determination was knowingly concealed." (R. at 125-126.)

Both Drs. Rivera and Manos recommended the agency affirm the initial decision to deny benefits. (R. at 124, 126.) On May 12, 2013, Dr. Manos submitted two SSA-831-U5 forms (Disability Determination and Transmittal Forms) marking Plaintiff as "not disabled." (R. at 127–28.)

## IV.     THE ADMINISTRATIVE DECISION

On April 20, 2016, the ALJ issued his decision. (R. at 25–37.) The AJL first found that Plaintiff meets the insured status requirements through June 30, 2014. (R. at 27.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

gainful activity since July 31, 2012, the original alleged onset date. (R. at 27.) The ALJ found that Plaintiff had the severe impairments of right arm laceration with neuropathic pain (status-post), left carpel tunnel syndrome, low back pain/sciatica, cervicalgia, borderline intellectual functioning, depression, and generalized anxiety disorder. (R. at 28.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically in regard to Plaintiff's mental capacity, the ALJ found that Plaintiff's impairment did not meet the criteria of Listing §12.05 for several reasons: 1) the examiner opined that Plaintiff's emotional state "very likely" interfered with his performance on the exam and thus the IQ scores "do not appear to be valid"; 2) Listing §12.05 requires that the low IQ score "manifest during the developmental period" (prior to age 22), and that since Plaintiff was 22 at the time of testing, there was no evidence to support onset prior to age 22; 3) Plaintiff's academic records "show that his cognitive function was in the average range, but that his achievement scores were significantly lower"; and 4) Plaintiff's daily activities demonstrated that Plaintiff did not have a deficit in adaptive functioning. (R. at 29–31.)

---

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ found the Plaintiff had "the residual functional capacity[2] to perform a range of medium work." (R. at 31.) In calculating Plaintiff's RFC, the ALJ relied upon the opinions of Drs. Rivera, Manos, and Deardroff, as well as Ms. Banks, an occupational therapist. (R. at 34–35.) The ALJ noted Dr. Deardroff's assignment of a Global Assessment of Functioning ("GAF") score of 49 and also noted that Dr. Deardroff opined that Plaintiff appeared anxious throughout the exam; the ALJ found "however, the totality of the evidence, including, but not limited to the claimant's activities of daily living and academic records, does not reflect the requisite deficits in adaptive functioning indicative of mild mental retardation as reported by the consultative examiner." (R. at 35.)

Relying on a vocational expert's testimony, the ALJ found that even though Plaintiff has no past relevant work, he can perform jobs that exist in significant numbers in the national economy. (R. at 35–36.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 36.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[2] A claimant's RFC is an assessment of "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his Statement of Errors, Plaintiff asserts that the ALJ erred in finding that Plaintiff did not meet or equal Listing §12.05(C). Within this contention of error, Plaintiff argues that the ALJ erred in finding Plaintiff had no deficits in adaptive functioning, the ALJ erred in not considering the Plaintiff's arm injury in his Listing §12.05 analysis; and, in the alternative, that the ALJ erred in not consulting with a medical expert when considering equivalency under Listing §12.05. The undersigned considers each of these arguments in turn.

**A. Listing §12.05**

To satisfy Listing 12.05, a claimant must first satisfy the diagnostic description applicable to all intellectual disabilities under § 12.05, namely, that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Next, the claimant must satisfy the criteria of any one of Listing 12.05's Paragraphs A, B, C, or D. *Id.* Here, Plaintiff challenges only the ALJ's findings as to Paragraph C, which requires that (a) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (b) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697–98 (6th Cir. 2007).[3]

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the

---

[3] The Commissioner argues that only Listing 12.05(B) was at issue in the ALJ's decision, and therefore Plaintiff's arguments regarding Listing 12.05(C) are misplaced. However, the ALJ expressly stated that he considered and rejected both Listing 12.05(B) and 12.05(C). (R. at 29.) Regardless of which paragraph of Listing 12.05 was at issue, Plaintiff has failed to carry his burden.

Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision where medical evidence "almost establishes a disability" under a Listing).

In the context of this framework, the undersigned considers each of Plaintiff's contentions.

**B. IQ Score**

Substantial evidence supports the ALJ's finding that the May 2013 IQ score was invalid. Plaintiff asserts that the ALJ erred in discounting his IQ score of 48 due to the consultative examiner's statements that "emotional factors very likely interfered" with Plaintiff's performance. (R. at 361.) The ALJ may accept evidence that an IQ score was affected by non-intellectual factors. *See, e.g.*, *Carrington v. Soc. Sec. Admin.*, 205 F.3d 1339 (Table) (6th Cir. 1999) (affirming ALJ's rejection of claimant's IQ based on consultative examiner's statement that her presentation indicated higher functioning); *Baker v. Comm'r of Soc. Sec.*, 21 F. App'x. 313, 315 (6th Cir. 2001) (finding substantial evidence supported the ALJ's rejection of IQ scores as "underestimating [claimant's] true intellectual abilities" based on record of daily activities); *Oyer v. Comm'r of Soc. Sec.*, No. 2:13-cv-704, 2014 WL 1796404, at *6 (S.D. Ohio, May 6, 2014) ("The ALJ, as a factfinder, may use all of the evidence of record to determine whether an otherwise qualifying IQ score is valid"); *see also Lax v. Astrue* 489 F. 3d 1080, 1086–87 (11th Cir. 2007) (affirming ALJ's decision to reject validity of IQ scores when consultative examiner believed they were unreliable because Plaintiff had been uncooperative during testing); *Markle v.*

11

*Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003) (ALJ may reject claimant's IQ scores where they are inconsistent with the record); *Clark v. Apfel*, 141 F.3d 1253, 1255–56 (8th Cir. 1998) ("It was therefore proper for the ALJ to examine the record in assessing the reliability of [claimant's] scores"); *Hancock v. Astrue,* 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases).

For example, in *Carrington v. Soc. Sec. Admin.*, the ALJ rejected the plaintiff's IQ score based on the consultative examiner's statements about the claimant's presentation. 205 F.3d 1339 (Table). The plaintiff had a full scale IQ score of 67. *Id*. The consultative examiner opined that, based on the claimant's presentation, the score "would appear to be somewhat of an underestimate of [the claimant's] true day to day functioning." *Id*. The examiner estimated the claimant likely functioned in the mid- to upper-borderline range. *Id*. Based on this evidence, the ALJ rejected the validity of the claimant's IQ score. *Id*. The Sixth Circuit affirmed the ALJ's determination, holding "there is no authority for the proposition that the raw score of any standardized test must be accepted to the exclusion of, and in contraction to, a contemporaneous interpretation or clarification by a qualified person. In fact, the law is just the opposite." *Id*.

The ALJ did not err in rejecting the validity of Plaintiff's IQ scores. The ALJ relied on the consultative examiner's statements regarding Plaintiff's presentation during the exam and Plaintiff's likely ability level. In addition, the ALJ pointed to evidence in the record that demonstrated Plaintiff's ability level, such as Plaintiff's high school grades and his ability to drive and work on a farm. Accordingly, the ALJ's finding that Plaintiff's IQ scores did not validly reflect his abilities is supported by substantial evidence.[4]

---

[4] Plaintiff correctly points out that the ALJ made an inaccurate statement of the law when asserting that "Listing 12.05 also requires that the [requisite IQ] score manifest during the developmental period," and therefore, because Plaintiff was already 22 when the IQ test was administered, the IQ score was of limited use. (R. at 29.) The Commissioner concedes that IQ scores need not be obtained prior to age 22 to be valid for purposes of Listing 12.05. (Resp.,

12

**C. Adaptive Functioning**

Moreover, even if Plaintiff's IQ scores were valid, the ALJ did not err in finding Plaintiff did not meet or equal Listing §12.05(C) because Plaintiff failed to establish the requisite deficits in adaptive functioning. An ALJ may find the claimant does not meet or equal Listing §12.05 if the claimant has no deficit in adaptive functioning, even if the claimant has a qualifying IQ score. *See West v. Comm'r Soc. Sec. Admin.,* 240 F. App'x 692, 697–98 (6th Cir. 2007) (affirming the ALJ's finding that the claimant with an IQ of 66 did not meet or equal Listing §12.05(C) when claimant had no deficit in adaptive functioning); *Wert v. Comm'r of Soc. Sec.,* 166 F. Supp. 3d 935, 943–44 (S.D. Ohio 2016).

In *Wert v. Commissioner of Social Security*, the claimant had a full-scale IQ score of 67 and several severe mental and physical impairments. 166 F. Supp. 3d. at 943. However, she also raised her children, had a driver's license and drove, and performed standard household chores. *Id*. at 944. Therefore, the ALJ found that she did not meet the "deficits in adaptive functioning" prong of Listing §12.05(C). *Id*. Recognizing that the ALJ could have found the claimant met or equaled the Listing, the district court nevertheless affirmed the ALJ's decision as supported by substantial evidence. *Id*.

Here, with regard to Listing §12.05, the ALJ found that

> [C]ontrary to claimant's reports to the psychological examiner that his activities of daily living are significantly limited, the record shows that he was able to farm, bail hay, and perform many other activities of daily living, including, but not limited to, driving and working (See e.g. Exhibits 7F; 11F/2); 12 F/2; 12F/28,29; and 13F). Thus, the claimant does not meet the significantly sub-average general intellectual functioning requirement. Accordingly, the claimant does not meet the criteria for listing 12.05.

(R. at 31.)

---

ECF No. 14 at 10, n.6.) However, given Plaintiff's inability to meet the other Listing criteria, this error by the ALJ was harmless.

13

As the ALJ discussed, the record reflects that Plaintiff can successfully perform many daily activities, such as driving, working on a farm, using the internet, or participating in a hunting trip. (R. at 521–22.) These activities constitute substantial evidence in support of the ALJ's determination that Plaintiff does not have the deficits in adaptive functioning required to satisfy Listing §12.05. The undersigned therefore concludes that substantial evidence supports the ALJ's decision that Plaintiff does not meet or equal the Listing.

**D. Physical Impairment**

Plaintiff asserts that the ALJ erred by not considering his physical limitation—an injury to his right arm resulting from a serious laceration from a mirror—in the ALJ's Listing §12.05(C) analysis. This argument is without merit. The ALJ already determined that Plaintiff did not meet the adaptive functioning or IQ requirements of Listing §12.05(C). Because a claimant must satisfy every element of a Listing, the ALJ did not need to consider whether Plaintiff's physical impairment satisfied the remaining requirements of Listing §12.05(C). Even assuming, *arguendo*, that Plaintiff's IQ score of 49 was valid, it would not have been within the required range for Listing §12.05(C) (60-70). On the other hand, if Plaintiff's impairments were considered under Listing §12.05(B), which governs valid IQ scores of 59 or lower, Listing §12.05(B) has no criteria related to physical limitations. Therefore, the ALJ did not err by failing to discuss Plaintiff's arm injury in any part of the Listing §12.05 analysis.

**E. Consulting with a Medical Expert**

Plaintiff argues in the alternative that the ALJ erred in not consulting with a medical expert when considering equivalency under Listing §12.05. Plaintiff cites SSR 96-6p, which requires an ALJ to consult with a medical expert when determining equivalency. Plaintiff's reliance on SSR 96-6p is misplaced.

As this court previously discussed in *Hewett v. Astrue*, SSR 96-6p provides that the requirement to consult an expert may be satisfied by one of the following documents: SSA-831-U5, SSA-832-U5, or SSA-833-U5. No. 2:07-cv-01038, 2009 WL 825525, at *2, n.1 (S.D. Ohio, Mar. 27, 2009) (quoting SSR 96-6P (S.S.A. July 2, 1996)). Dr. Manos filed two SSA-831-U5 forms, and the ALJ cited to and discussed Dr. Manos's opinions. (R. at 34, 127-128.) Though the ALJ did not discuss Dr. Manos's opinion specifically within the Listing analysis, that is not a requirement of SSR 96-6p. SSR 96-6p is satisfied where, as here, one of the foregoing documents is included in the record. *Hewett*, 2009 WL 825525, at *2, n.1. Therefore, the ALJ satisfied the requirements of SSR 96-6p.

Even if the ALJ had erred in his Listing §12.05 equivalency analysis, that error would be harmless because Plaintiff has not identified any medical evidence demonstrating that he has an impairment equal or equivalent to Listing §12.05. A claimant has the burden of showing he meets or equals a Listing. *See Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (Table) (6th Cir. 1995) ("It is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment."); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). To meet a Listing, a claimant must show his impairment is equal in severity to *all* criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531–32 (1990) ("[Claimant] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."); *Riley v. Apfel*, 162 F.3d 1162 (6th Cir. 1998) ("it must be determined whether [Plaintiff's] combination of impairments, is equal in severity to all the criteria for the most similar listed impairment"). Combined functional impairment will not satisfy equivalency. *See Sullivan*, 493 U.S. at 531–32 ("A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of

his unlisted impairment or combination of impairments is as severe as that of a listed impairment").

Specifically in regard to Listing §12.05(C), a claimant must still satisfy each of the three elements of the Listing. *See Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 675–76 (6th Cir. 2009) ("[Claimant] must still satisfy the three-prong definition of mental retardation and criteria (C)"). Failure to show a deficit in adaptive functioning can defeat a claim of equaling Listing §12.05(C). *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("Given that [claimant] has failed to present any evidence showing . . . deficits in adaptive functioning prior to the age of 22, there is also substantial evidence to support the ALJ's conclusion that [claimant's] impairments do not equal the listing for mental retardation").

As discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff has failed to establish the deficits in adaptive function required under Listing §12.05(C). The undersigned therefore concludes that any procedural error is harmless and does not require remand.

## VII. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE